UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH ANTHONY REYNA (JOECAT®),
        Plaintiff, Pro Se,

v.                          Civil Action No. 1:26-cv-12830-PGL

SUNO, INC.,
        Defendant.

---

**PLAINTIFF'S NOTICE OF NEWLY AVAILABLE PUBLIC INFORMATION
AND RENEWED PRESERVATION DEMAND**

(Informational Notice; Judicial Notice of Existence Requested Under Fed. R. Evid.
201(b)(2); Preservation Re-Noticed Under Fed. R. Civ. P. 37(e); Exhibits G and H)

**This filing does not seek merits relief.** It notifies the Court of newly available public information relevant to the claims already pleaded, and renews Plaintiff's preservation demand in light of that information. Plaintiff Joseph Anthony Reyna (JOECAT®), proceeding pro se, respectfully submits this Notice to bring to the Court's attention two items of newly available public information that bear on the claims already pleaded in the Complaint (ECF No. 1): (i) recently published reporting concerning Defendant's data-acquisition practices, and (ii) a publicly searchable database, published by The Atlantic, that returns Plaintiff's own works — by name and by artist mark — within an artificial-intelligence music-training corpus scraped from a source that Defendant's own reported code independently identifies as an ingestion source. This Notice asserts no new cause of action, seeks no finding of liability, and requests no adjudication of any claim or defense. It requests only that the Court (i) take judicial notice, under Fed. R. Evid. 201(b)(2), of the existence of the publications, dataset, and search results described below, and (ii) confirm that Defendant's preservation obligations, previously

1

triggered by Plaintiff's written demand, remain in force. Because no defendant has been served and no scheduling order has entered, this Notice imposes no burden and causes no prejudice.

## I. THE SUPPLEMENTAL AUTHORITY (PUBLISHED REPORTING)

1. On or about July 15, 2026, multiple established news organizations reported that a person who breached Defendant Suno, Inc. provided source code and internal data to the outlet 404 Media. The reporting has been independently republished by TechCrunch, Variety, Engadget, Gizmodo, and Digital Music News, among others. Plaintiff requests judicial notice, under Fed. R. Evid. 201(b)(2), of the fact that this reporting was published and of the specific statements it contains — not for the truth of any disputed matter asserted therein, but solely as widely disseminated public reporting whose existence and content are capable of ready and accurate determination.

2. As reported, Defendant's source code (dated 2023 and 2024) identifies platforms from which Defendant is reported to have ingested audio to train its models, including YouTube Music, Deezer, and Genius, together with the stock libraries Pond5, Jamendo, Freesound, and the International Music Score Library Project, as well as podcast feeds. The reporting further states that the ingestion was measured in the tens of thousands of hours per source; that Defendant is reported to have employed third-party scraping infrastructure supplied by a company identified as Bright Data to obtain material from YouTube; and that the code contained an instruction to filter out "non-music."

3. This reporting is consistent with, and tends to corroborate, Defendant's own prior judicial admission — already a matter of public record in the related action UMG Recordings, Inc. v. Suno, Inc., No. 1:24-cv-11611-FDS (D. Mass.) — that its models were trained on "essentially all music files of reasonable quality that are accessible on

2

the open internet." Plaintiff offers the reporting not to establish the ultimate facts of his claims, but as newly available public information that supports the inferences already pleaded. Representative published reporting is attached as Exhibit H.

## II. THE NEWLY AVAILABLE PUBLIC INFORMATION (SEARCHABLE DATASET)

4.    Separately, the news organization The Atlantic has published, as part of its "AI Watchdog" investigation (reporting by Alex Reisner), a set of publicly searchable databases documenting music that appears in datasets circulated for the training of generative artificial-intelligence models, comprising on the order of 21 million tracks across four datasets. Plaintiff relies on the searchable database as published by The Atlantic, and not on any independent characterization by Plaintiff regarding downstream users. Plaintiff requests judicial notice, under Fed. R. Evid. 201(b)(2), of the existence of this database and of the fact that the queries described below return the results shown — facts capable of ready and accurate determination because the database is publicly accessible and the reported search results are readily reproducible.

5.    Three queries of that database, using Plaintiff's artist names and mark, together return eight (8) of Plaintiff's recordings within the dataset identified as SLEEPING-DISCO 9M. True and correct screenshots are attached as Exhibit G. The returned works are: (a) as "JoeCat": "Swish" (2017), "Racks" featuring Trill Sammy (2018), and "More Than Rich" (2018); (b) as "Kinderr & JoeCat": "DaFunk," "Dangers of Reality," "Moon & Star," and "Auditory Hallucinations" (all 2014); and (c) as "Kinderr X JoeCat": "Stardust (Spin)" (2014).

6.    According to the published methodology of the SLEEPING-DISCO 9M dataset, the dataset was compiled by scraping the Genius website and consists of metadata and hyperlinks. Plaintiff does not contend that Defendant necessarily acquired or used the

3

SLEEPING-DISCO dataset itself. Rather, two facts are separately established and jointly relevant: (i) the dataset independently demonstrates that Plaintiff's works, identified by name and mark, exist within an AI-training corpus generated from Genius; and (ii) Defendant's own reported code independently identifies Genius as an ingestion source used by Defendant during the same period. Taken together, these independently established facts make it reasonable, and appropriate for discovery, to inquire whether identity-bearing information associated with Plaintiff's works was extracted into AI-training pipelines drawn from a source Defendant is reported to have scraped. Plaintiff does not ask the Court to resolve that inference now.

7.    The appearance of Plaintiff's identifying metadata within an AI-training corpus scraped from Genius corroborates Plaintiff's allegation that identity-bearing information associated with his works — his artist name and mark, track titles, release years, and collaborative credits — was extracted into AI-training pipelines. Because the record so extracted is described as metadata and hyperlinks rather than audio files alone, the injury underlying Plaintiff's Lanham Act and related identity-based counts — the machine collection and processing of Plaintiff's name and mark as data — does not depend on proof of audio copying and is not answered by any contention that the material was not copyrightable. Plaintiff does not contend that inclusion in the dataset alone establishes Defendant's use of Plaintiff's works; Plaintiff contends only that it corroborates his existing allegations regarding the existence and circulation of identity-bearing metadata drawn from a source Defendant is reported to have ingested.

## III. RELEVANCE TO THE PLEADED CLAIMS

8.    The foregoing is relevant to at least four counts already pleaded, noted here solely to preserve the record and without seeking any ruling:

4

**a. Removal, Alteration, or Omission of Copyright Management Information (17 U.S.C. § 1202(b)).** The reported large-scale automated ingestion of audio and metadata from third-party platforms, accompanied by a coded instruction to filter and process files at scale, corroborates Plaintiff's allegation regarding automated ingestion processes from which copyright-management information may have been omitted, altered, or separated. The reporting supplies platform-level and volume-level specificity to that allegation.

**b. Unjust Enrichment.** The reported volumes — on the order of 113,879 hours from YouTube Music and 62,117 hours from Pond5, among others — quantify the reported scale of the ingestion underlying Plaintiff's unjust-enrichment allegations.

**c. Lanham Act (15 U.S.C. § 1125).** Plaintiff's registered mark and artist identity appear, by name, within a Genius-scraped AI-training corpus (Exhibit G), and Defendant's own reported code identifies Genius as an ingestion source (Section I). These facts support Plaintiff's allegation concerning the alleged unauthorized machine collection and processing of identity-bearing information referencing Plaintiff's registered mark. To the extent Defendant contends that it suppresses artist names, that contention concerns output-prompt filtering; whether Defendant later suppresses artist names in generated outputs does not negate evidence concerning upstream collection or processing of identity-bearing metadata.

**d. Massachusetts Chapter 93A and Related Allegations.** The reporting that Defendant became aware of the underlying security incident in November 2025 and elected not to notify affected users, and that Defendant has characterized the exposed code as "outdated" and "no longer in use," together with Defendant's public and consumer-facing representations concerning its data practices, bears on Plaintiff's allegations of willfulness, knowledge, and post-incident conduct in a commercial

context.

## IV. THE "OUTDATED CODE" CHARACTERIZATION DOES NOT DIMINISH RELEVANCE

9.    Defendant has publicly characterized the exposed source code as "outdated" and "no longer in use." That characterization, even if accepted, does not diminish relevance. Historical source code may constitute evidence of prior operational practices regardless of whether it was later replaced. The code is reported to date from 2023 and 2024. Plaintiff's recordings identified in Exhibit G were released between 2014 and 2018, and Plaintiff's recording bearing ISRC USX9P1454799 was publicly distributed and available on consumer streaming platforms — including platforms named in the reporting — during the relevant period, with a documented record of public identification predating it. Plaintiff's works were therefore available to be ingested during the very period the exposed code covers. Whether Defendant's present pipeline differs is a question for discovery; the question here is whether historical code reflects operational practices during the relevant time.

## V. RENEWED PRESERVATION DEMAND

10.    Plaintiff transmitted a written Notice of Dispute and Preservation Demand to Defendant by certified mail dated March 12, 2026, prior to filing this action, demanding preservation of, among other things, account records, uploaded materials, output and derivative records, moderation and publication-state histories, records referencing Plaintiff's name and registered mark, and system records sufficient to show whether Plaintiff's submissions were used in training, development, or evaluation of Defendant's models. Defendant's duty to preserve attached upon receipt of that demand and is independently reinforced by the commencement of this action.

11.    The reporting described above indicates that Defendant became aware, no later than November 2025, that its training-data source code and associated customer records were exposed. That awareness predates Plaintiff's written demand and further confirms that the categories of evidence at issue are identifiable, discrete, and within Defendant's custody and control. Given Defendant's reported characterization of relevant code as "no longer in use," the risk that superseded systems, logs, datasets, and records may be decommissioned, overwritten, or discarded in the ordinary course is concrete rather than speculative.

12.    Accordingly, Plaintiff renews and re-notices his preservation demand and respectfully reminds Defendant of its obligation under Fed. R. Civ. P. 37(e) to take reasonable steps to preserve all electronically stored information relevant to this action, including without limitation: (a) training-data ingestion logs, manifests, and dataset inventories; (b) source-code versions, repositories, and version-control records, including Git history, commit hashes, pull requests, branch history, deployment records, and model-version manifests reflecting data-acquisition and filtering instructions (including any characterized as superseded or "no longer in use"); (c) records reflecting acquisition, download, or use of third-party AI-training datasets scraped from Genius or comparable sources; (d) records of third-party scraping infrastructure and contractor relationships, including any relationship with Bright Data, and any contracts, specifications, or audit records governing such work; (e) embeddings, vector indexes, retrieval systems, evaluation datasets, and prompt-engineering documentation to the extent they contain or derive from ingested material; (f) metadata-lineage records sufficient to show, for a given work, the source URL, crawler, ingestion date, internal identifier, transformations, and retention period; (g) account, upload, output, and moderation records associated with Plaintiff's identity, email addresses, or registered mark; (h) records concerning the November 2025

7

security incident and Defendant's internal response; (i) litigation-hold notices, data-retention schedules, deletion policies, backup-rotation procedures, and communications concerning preservation decisions; (j) access, credential, and authentication logs, and repository access history sufficient to show who accessed, cloned, or downloaded relevant repositories and datasets, and when; (k) infrastructure and configuration artifacts, including notebooks, YAML and other configuration files, container and Docker files, infrastructure-as-code (e.g., Terraform), continuous-integration pipelines, and machine-learning operations tooling (e.g., MLflow, Weights & Biases, Airflow, and Kubernetes manifests); (l) internal engineering and business communications concerning the foregoing, including records in Slack, Discord, Jira, Linear, Notion, Confluence, and Google Workspace; and (m) records sufficient to determine whether Plaintiff's works, metadata, or identifiers were excluded or omitted, including exclusion lists, filtering rules, deduplication records, and audit logs documenting omission.

## VI. RELIEF REQUESTED

13.    Plaintiff respectfully requests that the Court: (a) take judicial notice, under Fed. R. Evid. 201(b)(2), of the existence of the publications, the searchable dataset, and the search results described herein and attached as Exhibits G and H; (b) to the extent the Court deems appropriate, note on the record that Defendant's preservation obligations remain in force; and (c) grant such other administrative relief as is just. No adjudication of any claim or defense is requested at this time.


Respectfully submitted,

/s/ Joseph Anthony Reyna
Joseph Anthony Reyna (JOECAT®)
Plaintiff, Pro Se

5900 Balcones Drive, STE 100
Austin, TX 78731
512-200-3069
whitehat@joecattt.com
USPTO Reg. No. 6,057,783 (JOECAT®)

*(Plaintiff communicates exclusively in writing via U.S. Mail as an accommodation. All court communications must be directed to the mailing address above. Minimum fourteen (14) days' advance notice is requested for any hearing.)*

Dated: July 21, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, a true and correct copy of the foregoing Plaintiff's Notice of Supplemental Authority and Newly Available Public Information, with Renewed Preservation Demand, together with Exhibits G and H, was filed with the Clerk of the United States District Court for the District of Massachusetts by U.S. Mail. As of the date of this filing, Defendant Suno, Inc. has not been served with process and has not appeared in this action; Plaintiff's Motion for Service by United States Marshal (ECF No. 3) remains pending. Under Federal Rule of Civil Procedure 5(a)(2), no service of this Notice on Defendant is required, as this filing asserts no new claim for relief. Plaintiff will serve Defendant with this filing, together with the summons and Complaint, upon completion of service of process, or will separately serve this filing on Defendant's counsel promptly after an appearance is entered, whichever occurs first.

/s/ Joseph Anthony Reyna
Joseph Anthony Reyna (JOECAT®)
Plaintiff, Pro Se
5900 Balcones Drive, STE 100
Austin, TX 78731
512-200-3069
whitehat@joecattt.com
USPTO Reg. No. 6,057,783 (JOECAT®)

